**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

WANDA WILLINGHAM; LUCILLE
McKNIGHT; WARD DeWITT; DAVID REID;
DEBORAH WILLIAMS-MUHAMMAD; ASHLEY
PEREZ; COLEMAN HUGHES; DONNA
ROBINSON; RODNEY DAVIS; STEPHANIE
DAVIS; DAVID YOUNG; ALBANY COUNTY
BRANCH OF THE NATIONAL ASSOCIATION
FOR THE ADVANCEMENT OF COLORED
PEOPLE; ARBOR HILL CONCERNED
CITIZENS NEIGHBORHOOD ASSOCIATION;
AARON MAIR; MARYAM MAIR; ANNE POPE;
and MARK MISHLER,

                                    Plaintiffs,

            v.                                          No. 04-CV-369
                                                             (DRH)
COUNTY OF ALBANY; ALBANY COUNTY
BOARD OF ELECTIONS; JAMIE GILKEY;
TYLER TRICE; and DYANN PARKER,

                                    Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

GIBSON, DUNN & CRUTCHER LLP          MITCHELL A. KARLAN, ESQ.
Attorney for Plaintiffs
200 Park Avenue
47th Floor
New York, New York 10166-0193

DerOHANNESIAN & DerOHANNESIAN        PAUL DerOHANNESIAN II, ESQ.
Attorney for Plaintiffs
39 North Pearl Street
1st Floor
Albany, New York 12207

MICHAEL C. LYNCH, ESQ.
Albany County Attorney
Attorney for Defendants County of Albany
       and Albany County Board of Elections

112 State Street
Room 900
Albany, New York 12207

HACKER & MURPHY                          THOMAS D. BUCHANAN, ESQ.
Attorney for Defendants Gilkey and
   Trice
7 Airport Park Boulevard
Post Office Box 104
Latham, New York 12110-0104

DYANN PARKER
Defendant Pro Se
146 Clinton Avenue
Albany, New York 12210

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

The above captioned plaintiffs, fifteen individuals and two community organizations,

bring this action seeking declaratory and injunctive relief plus attorneys' fees and costs

against the County of Albany and its Board of Elections (collectively referred to herein as

the "County") as well as other defendants.  Plaintiffs allege that the defendants abused the

absentee ballot process in various ways up to and including special primary and general

elections held in March and April, 2004 in violation of their rights under the First and

Fourteenth Amendments and the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq

('VRA").  Presently pending is the County's motion for summary judgment pursuant to Fed.

R. Civ. P. 56.  Docket No. 51.  Plaintiffs oppose the motion.  Docket Nos. 62, 74.  For the

reasons which follow, the County's motion is denied.

2

## I. Background

The facts are related herein in the light most favorable to plaintiffs as the non-moving parties. See subsection II(A) infra.

In 2003, certain plaintiffs in this case commenced an action challenging a redistricting plan for the Albany County Legislature as violating the VRA. That challenge succeeded and resulted in an order for a special election. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 357 F.3d 260 (2d Cir.2004). The special primary election was scheduled for March 2, 2004 and the special general election was scheduled for April 27, 2004.

At all times material herein, defendant Jamie Gilkey ("Gilkey") was employed by the Albany Housing Authority ("AHA") as an employment liaison officer in the Wage Center. Gilkey also served as a Democratic Party ward leader and the campaign manager for two candidates for the Albany County Legislature in the special election. Defendant Tyler Trice ("Trice") was also employed by the AHA as a grant implementation assistant. Defendant Dyann Parker ("Parker") served as a Democratic Party committee person under Gilkey's leadership. Trice and Parker worked together with Gilkey in the special election for the election of the two candidates whose campaigns Gilkey managed.

Leading up to the special primary election on March 2, 2004, Gilkey, Trice, and Parker obtained over 150 blank applications for absentee ballots. Those applications were taken by Gilkey, Trice, Parker, and others to residents of an AHA facility who were "low-income, older and vulnerable." Second Am. Compl. (Docket No. 67) at ¶ 39. The applications were completed either by the voter or by Gilkey, Trice, Parker, or others. Many contained false statements asserting needs for absentee ballots and many contained

handwritten notations that the ballots should be held by the Board of Elections ("Board") for Gilkey or his designee rather than mailed to the voter.  The applications were then delivered to the Board.  As per such instructions, ballots for approved applicants were then held by the Board for Gilkey or his designee, who would then deliver the ballots to the voters, take back the completed ballots, and deliver them to the Board.  In certain instances, Gilkey, Trice, Parker, or others would actually complete the ballots for voters.  In addition, Gilkey, Trice, and others would intimidate voters to cast their ballots for candidates favored by Gilkey.

Most such ballots were accepted and counted by the Board for the March 2, 2004 special primary election.  Certain candidates defeated in the districts affected by the activities of Gilkey, Trice, Parker, and others then challenged the absentee ballot process in an action in state court.  See DeWitt v. Graziano, Index No. 1244-04 (Albany County S. Ct. 2004).  After an evidentiary hearing, approximately 160 absentee ballots were rejected and a new special primary election was ordered held for one of the affected districts.  The special general election was held as scheduled on April 27, 2004.

This action followed.


## II. Discussion

Plaintiffs originally commenced this action against the two County defendants, the AHA, and eight individual defendants.  The AHA and one individual defendant have settled and the action against them has been terminated.  Docket No. 55.  Five individual defendants have defaulted.  Docket Nos. 58, 80.  Thus, the remaining defendants are the County, Gilkey, Trice, and Parker.

4

The second amended complaint asserts four separate causes of action with all causes of action asserted against all defendants.  The first alleges a denial of due process, the second a denial of equal protection, the third a violation of the VRA, and the fourth a denial of the right of association.[1]  The County seeks summary judgment on all claims.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary

---

[1]The County filed its motion for summary judgment against the first amended complaint.  Docket No. 3.  The second amended complaint contains essentially the same due process, equal protection, and VRA claims as the first amended complaint but adds the First Amendment right of association claim.

judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223 (2d Cir. 1994);

Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Plaintiffs contend that while the County's motion is presented as one for summary

judgment, it should actually be considered as a motion for judgment on the pleadings under

Fed. R. Civ. P. 12(c) as, according to plaintiffs, the County's motion appears to be

addressed to the pleadings rather than to the evidence.  Pls. Mem. of Law (Docket No. 74)

at 19.  On a motion for a judgment on the pleadings, "we apply the same standard as that

applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the

complaint as true and drawing all reasonable inferences in favor of the nonmoving party."

King v. American Airlines, Inc., 284  F.3d 352, 356 (2d Cir. 2002) (quotation marks omitted).

Judgment on the pleadings should be granted "only if it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

Weinstein v. Albright, 261 F.3d 127, 131-32 (2d Cir.2001).

While both the County and plaintiffs refer liberally to the allegations in the pleadings,

both also make extensive references to matters outside the pleadings.  The Court has

considered the matters submitted outside the pleadings and, therefore, the County's motion

will be considered as one for summary judgment.

### B. Subject Matter Jurisdiction

As a threshold matter, the County contends on several grounds that plaintiffs have

failed to establish subject matter jurisdiction for this action.

### 1. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine arises from decisions by the Supreme Court in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and provides that "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004). As the Supreme Court has recently noted, however, the doctrine

> is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. [The doctrine] does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 1521 (2005).

This action was not brought by the "state-court losers" and, therefore, the Rooker-Feldman doctrine does not apply. Moreover, construing the County's argument as one founded on principles of collateral estoppel or res judicata, such preclusions of subject matter jurisdiction are also inapplicable for essentially the same reasons. First, both require an identity of parties, including those in privity with the parties to the first action. See Marine Midland Bank v. Slyman, 995 F.2d 362, 365 (2d Cir. 1993) (collecting cases). Here, the DeWitt action involved Wanda Willingham, Lucille McKnight, and Ward DeWitt. Those three are plaintiffs in this action, but this action is also brought by fourteen other plaintiffs. There has been no showing that the other plaintiffs here are in privity with the DeWitt

plaintiffs as to the claims asserted here.

Second, both collateral estoppel and res judicata require an identity of issues.  See BBS Norwalk One, Inc. v. Raccolta, Inc., 177 F.3d 674, 677 (2d Cir. 1997) (collateral estoppel); Ruiz v. Commissioner of Dep't of Transp. of City of New York, 858 F.2d 898, 902 (2d Cir. 1988) (res judicata).  While there is overlap in the two cases, the DeWitt case asserted violations of New York election law while this action asserts claims predicated on the federal constitution and the VRA.  There is also, therefore, no identity of issues.

The County's motion on this ground is denied.


## 2. Standing

The County next contends that plaintiffs lack standing to assert the claims herein.

To satisfy the "case or controversy" requirement of Article III, Section 2 of the United States Constitution, a plaintiff must demonstrate that "the challenged action has caused a plaintiff injury in fact . . . , that the injury may fairly be traced to the challenged action of defendant, and that a favorable decision is likely to redress it . . . ." United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990) (citations omitted); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

The plaintiffs here are fifteen voters registered in Albany County and two community organizations whose memberships include voters registered to vote in Albany County.  The effect of defendants' conduct here increases the number of absentee ballots.  Increasing the number of absentee ballots dilutes the weight and effect of the legitimate ballots of other voters, including plaintiffs.  Viewing the evidence in the light most favorable to plaintiffs, then, they have sufficiently shown that the conduct of defendants concerning

8

absentee ballots caused and will cause the votes of plaintiffs and the members of their organizations to be diluted and that the relief sought here would redress the injury.  See Pierce v. Allegheny County Bd. of Elections, 324 F. Supp. 2d 684, 692-93 (W.D. Pa. 2003). Accordingly, plaintiffs have sufficiently demonstrated their standing here and the County's contention to the contrary is rejected.


**3. Mootness**

The County contends that plaintiffs' claims here are rendered moot by the prior DeWitt action.

Like the issue of standing, the mootness doctrine arises from the Constitution's "case or controversy" requirement and holds that "[a] case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur."  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998).  In election cases such as this, the occurrence of the contested election frequently functions as the interim event rendering an action moot. See, e.g., Van Wie v. Pataki, 267 F.3d 109, 114-15 (2d Cir. 2001); Freedom Party of New York v. New York State Bd. of Elections, 77 F.3d 660, 662-63 (2d Cir. 1996).

Plaintiffs contend, however, that DeWitt concerned only three of the election districts in the County Legislature special primary  election[2] while the claims in this case concern all thirty-nine such districts and all elections.  Plaintiffs' claims here clearly extend beyond

---

[2]See, e.g., DeWitt Order to Show Cause dated Mar. 6, 2004 (Docket No. 51, Ex. G) at 2 (ordering a hearing concerning absentee ballot procedures in Districts 2, 3, and 4); see also Transcript of DeWitt Settlement (Docket No. 51, Ex. C) at 4 (limiting relief to District 3).

9

Districts 2, 3, and 4 to all thirty-nine districts and to all elections, but plaintiffs offer as evidence of their broader claims here only the testimony of Gilkey given during the evidentiary hearing in the DeWitt case.  See Pls. Mem. of Law (Docket No. 74) at 17.  The entire record of that testimony on this issue cited by plaintiffs is as follows:

> Q    Let me see if I understand this.  You have been doing this for how many years?
>
> A    Oh, maybe ten.  Maybe actually probably initially in 1993. 11 years.
>
> Q    And you are pretty prolific in the obtaining of absentee ballot applications in the County.  Right?
>
> A    I don't know if I would use those words, but I have submitted, I don't know, probably about 150 in the 3rd Legislative District.
>
> Q    A year?
>
> A    No.  This particular election.
>
> Q    Well you have in past election cycles too?
>
> A    Not that high a number.  No, sir.
>
> Q    It would be fair to say that over your ten plus years experience you have probably submitted what 500?  Over 500?
>
> A    More than that.  Yes.
>
> Q    500 to a thousand.  Right?
>
> A    In that range.

Transcript of Proceedings in the DeWitt Case on Mar. 18, 2004 (Docket No. 51, Ex. E) [hereinafter "Gilkey Testimony"] at 262-63.  Liberally construed in the light most favorable to plaintiffs, Gilkey's testimony describes an ongoing practice, at least by him, without

limitation to Districts 2-4.  No other evidence of absentee ballot abuses outside those three districts has been cited by plaintiffs.  However, although the sufficiency of this evidence presents a close question, liberally construed, that evidence supports plaintiffs' allegations of absentee ballot abuses beyond the three districts at issue in <u>DeWitt</u>.[3]  Thus, because the <u>DeWitt</u> settlement was limited to only one of the thirty-nine districts, it did not function to render moot plaintiffs' claims here.

Moreover, "[a] moot case may still be justiciable . . . if the underlying dispute is 'capable of repetition, yet evading review.'" <u>Van Wie</u>, 267 F.3d at 114 (citing <u>Knaust v. City of Kingston</u>, 157 F.3d 86, 88 (2d Cir. 1998)).  Here, Gilkey's testimony supports plaintiffs' allegations that the absentee ballot abuses were long-standing and ongoing rather than episodic and, therefore, likely to recur.  Crediting that testimony for purposes of this motion and construing it in the light most favorable to plaintiffs, that testimony suffices to demonstrate that the acts of defendants complained of here are reasonably capable of repetition.  It is also reasonably likely that such conduct would evade review if not addressed here given the compressed time available to bring a legal action in the context of an election.  Accordingly,

---

[3]The County notes that in denying plaintiffs' motion for a preliminary injunction, the district court found that plaintiffs had cited no evidence of absentee ballot abuses outside Districts 2-4.  County Reply Mem. of Law (Docket No. 64) at 5.  It is unclear whether Gilkey's testimony was presented to the district court on that motion, but it will be assumed <u>arguendo</u> that it was.  On that motion, the district court could fairly have construed that testimony in the light most favorable to the County or found it entitled to insufficient weight to support plaintiffs' motion.  Either determination would have compelled the conclusion that no evidence had been presented that any abuses extended beyond Districts 2-4.  On this motion, however, the requirements of Rule 56 mandate that this evidence be liberally construed and viewed in the light most favorable to plaintiffs.  So construed, Gilkey's testimony leads to the opposite conclusion on the instant motion.

plaintiffs have also satisfied this exception to the mootness doctrine.

For both reasons, the County's motion on this ground is denied.


### C. Knowledge and Intent

Plaintiffs allege that Gilkey, Trice, and Parker obtained absentee ballot applications, had them completed and signed by voters, made notations on the applications that ballots should be held for delivery to the absentee voters by Gilkey, Trice, and Parker, and wrongfully obtained completed absentee ballots from voters and delivered them to the Board.  Plaintiffs further allege that this conspiracy was joined and abetted by the Board, acting through its officers and employees.[4]  The County contends that plaintiffs have proffered no evidence to support their allegation that the Board conspired with or acted intentionally to facilitate the conduct of Gilkey, Trice, or Parker and that without such evidence, plaintiffs' claims against the County cannot be sustained.  County Mem. of Law (Docket No. 51) at 10-13.  The County contends in parallel arguments that plaintiffs have offered no evidence on its claimed violations of the Due Process and Equal Protection clauses that the County acted purposely or intentionally.

To establish a party's membership in a conspiracy, there must exist "proof of purposeful behavior aimed at furthering the goals of the conspiracy."  United States v. Diaz, 176 F.3d 52, 97 (2d Cir. 1999) (quoting United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997)).  To establish that a party abetted others, the proof must show that the party

_____

[4]A board of elections exists in each county outside New York City (which has one board for its five counties) to oversee the registration of voters and the conduct of elections.  Each county board is comprised of two commissioners, one from each of the major political parties.  N.Y. Elec. Law art. 2 (McKinney 1998 & Supp. 2005).

acted with knowledge of the object of the underlying conduct and an intent that the object be achieved.  See United States v. Chen, 283 F. Supp. 2d 664, 670 (D. Conn. 2003), aff'd, 378 F.3d 151 (2d Cir. 2004).  Thus, as the County contends, to support their claims of conspiracy and abetting, plaintiffs must offer evidence that the Board acted with knowledge of the objects of Gilkey, Trice, and Parker and with the intent to assist in achieving those objects.

There is substantial evidence that Gilkey, Trice, and parker obtained substantial numbers of blank absentee ballot application forms from the Board.  However, as the County points out, such forms are available to anyone in unlimited numbers and are, in fact, available to the public on the Internet along with instructions.  See County Reply Mem. of Lw (Docket No. 64) at 8 & Ex. I.  Therefore, the evidence that Board employees provided forms and instructions to Gilkey, Trice, and Parker regarding application forms is of minimal probative value here.

The other evidence proffered by plaintiffs on this issue consists at least of the following.  First, for a period of years, Gilkey and Trice have obtained absentee ballot applications, delivered completed applications to the Board, and made arrangements to pick up ballots from the Board for voters.  Viewed in the light most favorable to plaintiffs, the volume of the activity of Gilkey and Trice was noteworthy.  See, e.g., Gilkey Testimony at 262-63 (500-1,000 ballots over eleven-year period); Trice Dep. Tr. (Docket No. 62, Ex. 2) at 48-53.(testifying that he followed this practice for elections since 2000).  Moreover, there is evidence that the directions to deliver ballots to Gilkey, Trice, and Parker existed in such significant numbers and that certain applications contained such handwritten directions for delivery noticeably different from the handwriting on the applications themselves.

Therefore, notwithstanding substantial evidence to the contrary, the evidence proffered by plaintiffs suffices to raise questions of fact whether Board employees acted with knowledge of the abuses of the absentee ballot process by Gilkey, Trice, or Parker and with the intent to assist that conduct.[5]

The County's motion on this ground is denied as to both its challenge to plaintiffs' conspiracy and abetting claims and its first two causes of action for due process and equal protection violations.

## D. VRA

In their third cause of action, plaintiffs contend that Gilkey, Trice, and Parker intimidated, threatened, and coerced voters to sign absentee ballots and applications, and that the County conspired with these defendants and abetted this conduct. Second Am. Compl. at ¶¶103-05. The County seeks summary judgment on this claim on the ground that plaintiffs have offered no evidence showing that the County acted with the requisite knowledge and intent. County Mem. of Law at 13-15.

The VRA provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce . . . any person  for voting . . . or . . . for urging or aiding any person to vote . . . ." 42 U.S.C. § 1973i(b). This provision does not protect voters against inadvertent or technical violations of voting procedures but against conduct

_____

[5]As noted, Gilkey testified under oath during the evidentiary hearing in the DeWitt case. At his deposition in this case, however, Gilkey declined to answer certain questions, inoking his Fifth Amendment protection against self-incrimination. Plaintiffs assert that they are entitled on this motion to the benefit of a negative inference from this invocation, not only against Gilkey but also against the County. See Pls. Mem. of Law at 34-35. Given the disposition herein, this contention need not be resolved at this time.

intended to "intimidate, threaten, or coerce."  See Olagues v. Russoniello, 770 F.2d 791, 804 (9th Cir. 1985) (holding that a claim under § 1973i(b) required proof of defendants' intent to intimidate, threaten, or coerce).  In the circumstances of this case, proof of the requisite intent must include proof that the County knew of and disregarded the conduct of Gilkey, Trice, or Parker to intimidate or coerce voters or of their intent to engage in such conduct.  The VRA claim thus requires proof beyond that required for the due process and equal protection claims regarding the absentee ballot process abuses.

While plaintiffs have offered evidence that Gilkey, Trice, and Parker intimidated voters, no evidence has been presented to raise a question of fact whether any Board employee knew of and disregarded such conduct.  However, as plaintiffs note, the County's motion here was filed prior to the close of discovery and the record does not reflect whether any such evidence has been developed.  Accordingly, the County's motion on this ground will be denied without prejudice to renewal at the conclusion of discovery.  See Fed. R. Civ. P. 56(f).[6]

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the County's motion for summary judgment (Docket No. 51) is:

1. **DENIED** as to plaintiffs' claims under the Due Process and Equal

Protection Clauses asserted in the first two causes of action of the second amended

---

[6]As noted, plaintiffs' second amended complaint was filed after the County filed the instant motion.  That complaint added a cause of action alleging a violation of plaintiffs' right of association.  All parties, of course, may still file motions regarding that claim.

complaint; and

      2. **DENIED** without prejudice to renewal as to plaintiffs' claim under the VRA asserted in the third causes of action in the second amended complaint.


**IT IS SO ORDERED.**

DATED:  July 12, 2005
       Albany, New York

                                 United States Magistrate Judge