**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

WANDA WILLINGHAM; LUCILLE
McKNIGHT; WARD DeWITT; DAVID REID;
DEBORAH WILLIAMS-MUHAMMAD; ASHLEY
PEREZ; COLEMAN HUGHES; DONNA
ROBINSON; RODNEY DAVIS; STEPHANIE
DAVIS; DAVID YOUNG; ALBANY COUNTY
BRANCH OF THE NATIONAL ASSOCIATION
FOR THE ADVANCEMENT OF COLORED
PEOPLE; ARBOR HILL CONCERNED
CITIZENS NEIGHBORHOOD ASSOCIATION;
AARON MAIR; MARYAM MAIR; ANNE POPE;
and MARK MISHLER,

                              Plaintiffs,


         v.                                          No. 04-CV-369
                                                        (DRH)
COUNTY OF ALBANY; ALBANY COUNTY
BOARD OF ELECTIONS; JAMIE GILKEY;
TYLER TRICE; and DYANN PARKER,

                              Defendants.
_____

**APPEARANCES:**                    **OF COUNSEL:**

GIBSON, DUNN & CRUTCHER LLP          MITCHELL A. KARLAN, ESQ.
Attorney for Plaintiffs
200 Park Avenue
47th Floor
New York, New York 10166-0193

DerOHANNESIAN & DerOHANNESIAN        PAUL DerOHANNESIAN II, ESQ.
Attorney for Plaintiffs
39 North Pearl Street
1st Floor
Albany, New York 12207

KRISTINA A. BURNS, ESQ.
Albany County Attorney
Attorney for Defendants County of Albany
     and Albany County Board of Elections
112 State Street

Room 900
Albany, New York 12207

NAPIERSKI, VanDENBURGH &                THOMAS J. O'CONNOR, ESQ.
   NAPIERSKI, L.L.P.                    SHAWN T. NASH, ESQ.
Attorney for Defendants County of Albany
   and Albany County Board of Elections
296 Washington Avenue Extension
Albany, New York 12203

HACKER & MURPHY, LLP                    THOMAS D. BUCHANAN, ESQ.
Attorney for Defendants Gilkey and
   Trice
7 Airport Park Boulevard
Post Office Box 104
Latham, New York 12110-0104

DYANN PARKER
Defendant Pro Se
146 Clinton Avenue
Albany, New York 12210

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiffs, fifteen individuals and two community organizations, brought this action

seeking declaratory and injunctive relief plus attorneys' fees and costs against the County

of Albany and its Board of Elections (collectively the "County"); Jamie Gilkey ("Gilkey"),

Tyler Trice ("Trice"), and Dyann Parker ("Parker"); and others who are no longer part of the

case.[1]  Plaintiffs contend in four causes of action that the defendants conspired to deprive

them of their constitutional and statutory rights by abusing the absentee ballot process in

---

[1]Defendants Albany Housing Authority and Steven Longo resolved the claims
against them by agreeing to the entry of a consent judgment.  Docket No. 55.  A default
judgment was entered against five other individual defendants and they were severed
from the case.  Docket No. 58.

2

Albany County in violation of the First and Fourteenth Amendments, 42 U.S.C. § 1983, and the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq ('VRA'). Presently pending are the following motions for summary judgment pursuant to Fed. R. Civ. P. 56:

        1. Plaintiffs' motion against Gilkey and Trice on all claims (Docket No. 100);

        2.  The County's cross-motion[2] as to two causes of action (Docket No. 102); and

        3. The motion of Gilkey and Trice as to all claims (Docket Nos. 103, 104[3]).

For the reasons which follow, plaintiffs' motion is denied, the County's cross-motion is granted, and the motions of Gilkey and Trice are granted in part and denied in part.


## I. Background

The claims in this case follow from two earlier cases, one in this Court and the other in Albany County Supreme Court.  In 2003, certain plaintiffs in this case commenced an action challenging a redistricting plan for the Albany County Legislature as violating the VRA.  That challenge succeeded and resulted in an order for a special election.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 357 F.3d 260 (2d Cir. 2004).  The special primary election was scheduled for March 2, 2004 and the special general election was scheduled for April 27, 2004.

Gilkey was employed by the Albany Housing Authority ("AHA") as an employment liaison officer in the Wage Center. Gilkey also served as a Democratic Party ward leader

---

     [2]See subsection II(B)(1) infra.

     [3]It appears that a duplicate copy of the motion of Gilkey and Trice (Docket No. 103) was inadvertently filed as Docket No. 104.

and the campaign manager for two candidates for the Albany County Legislature in the special election.  Trice was also employed by the AHA as a grant implementation assistant. Leading up to the special primary election on March 2, 2004, Gilkey obtained blank applications for absentee ballots.  Gilkey, Trice, and others brought applications to residents of the two districts in which his candidates were seeking nomination in the special primary. Those districts included apartment buildings operated by the AHA.

Under New York law, an individual may vote as an absentee voter if he or she will be absent from the county at the time of the election or is disabled, either permanently or temporarily, from appearing at the designated polling place on the day of the election.  N.Y. Elec. Law § 8-400(1) (McKinney 1998).  Applications for absentee ballots are made to the voter's county-of-residence Board of Elections on forms designated by that board.  Id. at § 8-400(2).  An applicant may direct that an absentee ballot be mailed or delivered "to any person designated for such purpose in writing by him, at the office of the board . . . ."  Id. at § 8-406.

From the evidence proffered on these motions, it appears that Gilkey principally approached residents of the Townsend Park Homes on Central Avenue in Albany prior to the March 2004 special primary election.  Townsend Park is an eighteen-story building operated by the AHA with approximately 158, one-bedroom apartments available to qualifying low-income senior and disabled individuals.  Saunders Decl. (Docket No. 113(2)) at ¶ 2.  The residents are predominantly African-American.  Id.  The building is designated as a polling place and residents may vote in the building.  Id. at ¶ 13.  The building is kept locked and is accessible only to residents, their guests, and AHA personnel.  Id. at ¶ 3.

Prior to the primary election, Gilkey submitted numerous absentee ballot applications

4

to the County Board of Elections ("Board").[4]  The applications were signed by the voters, asserted various reasons for needing to vote by absentee ballot, and in many instances directed that the absentee ballot be held by the Board for Gilkey for delivery to the voter. Tr. of Gilkey Testimony at <u>DeWitt</u> Hr'g (Docket No. 100(2), Ex. D) ("Gilkey <u>DeWitt</u> Tr.")  at 188.  Gilkey submitted approximately 160 applications to the Board, which rejected approximately thirty and issued approximately 130 absentee ballots to Gilkey.  <u>Id.</u> at 218. Most of those ballots were completed, signed, and submitted to the Board for the March 2 primary.  <u>Id.</u>

Wanda Willingham, Lucille McKnight, and Ward DeWitt, plaintiffs in this action, then commenced an action in Albany County Supreme Court challenging the primary results in the three districts in which they were candidates based on the absentee ballot activities of Gilkey and Trice.  A hearing on these allegations was held on March 17 and 18, 2004 during which Gilkey testified.  <u>See</u> Gilkey <u>DeWitt</u> Tr.  As a result of that hearing, the parties stipulated that the results in two of the three challenged districts would be accepted but that a new special primary election would be held in Albany County Legislature District 3, where Willingham was a candidate and the one most affected by Gilkey's activities.  <u>DeWitt</u> Settlement Tr. (Docket No. 100(2), Ex. E) at 4-6.

This action followed.

---

[4]Absentee ballot applications obtained from voters by Trice or others were delivered to Gilkey for submission to the Board.  Gilkey lived across the street from the Board's offices.  Tr. of Gilkey Testimony at <u>DeWitt</u> Hr'g (Docket No. 100(2), Ex. D) at 186-88.

## II. Discussion

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

## B. Preliminary Issues

## 1. The County's "Cross-Motion"

Within the deadline for filing dispositive motions, plaintiffs moved for summary

6

judgment against Gilkey and Trice but made no such motion as to either the County or Parker.  The County then filed a "cross-motion" opposing plaintiffs' motion for summary judgment on their due process and equal protection claims under § 1983 to the extent that plaintiffs contend that Gilkey and Trice conspired with the County and seeking summary judgment against plaintiffs on their VRA and right of association claims.  Plaintiffs contend that the County's cross-motion is improper since plaintiffs made no motion against the County.

In support of their motion against Gilkey and Trice, plaintiffs contend, <u>inter alia</u>, that the element of those claims requiring that Gilkey and Trice acted "under color of state law" has been demonstrated by their conspiring with the County to deprive plaintiffs of their constitutional rights.  Pls. Mem. of Law (Docket No. 100(28)) at 13-15.  If plaintiffs prevail on this argument against Gilkey and Trice, such a holding will arguably become the law of the case or at least persuasive authority against the County's denial of this element of plaintiffs' claims.  <u>See</u> <u>United States v. Thorn</u>, 446 F.3d 378, 383 (2d. Cir. 2006) ("The law of the case doctrine counsels against revisiting . . . prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons . . . .").  The County would potentially be prejudiced in its subsequent litigation of this case by foreclosing its opposition to plaintiffs' contention that the defendants acted "under color of state law."  Given the County's stake in the outcome of this issue, then, its arguments in opposition to plaintiffs' motion against Gilkey and Trice on this ground will be considered.

Plaintiffs correctly note that the County's cross-motion as to plaintiffs' VRA and right of association claims were improperly cast and filed as a cross-motion rather than as a

regular motion filed within the deadline for such motions.  The only consequence of this choice, however, was to limit plaintiffs' time to respond.  Compare N.D.N.Y.L.R. 7.1(b)(1) (granting seventeen days to file a response to a motion), with N.D.N.Y.L.R. 7.1(c) (granting eleven days to file a response to a cross-motion).  Here, plaintiffs were granted additional time to respond, obviating any prejudice, and did in fact file a response.  See Stipulation/Order filed Nov. 29, 2005 (Docket No. 112); Pls. Reply (Docket No. 113).  Accordingly, the County's cross-motion will be considered in all respects.

## 2. Gilkey and Adverse Inferences

Gilkey testified at length under oath on March 17-18, 2004 during the DeWitt hearing in state court.  See Docket No. 100(3), Ex. D.  At his deposition in this case on January 28, 2005, Gilkey asserted his Fifth Amendment privilege against self-incrimination in declining to answer various questions.  Gilkey Dep. Tr. (Docket No. 100(3), Ex. F) at 11-29.  Plaintiffs contend that they are entitled to an adverse inference from Gilkey's refusal to answer those questions.  Defs. Mem. of Law at 11-12.

A party testifying in a civil proceeding retains the right under the Fifth Amendment to refuse to answer questions if the answers might tend to incriminate him or her, but an adverse party may then be entitled to have the trier of fact "'draw a negative inference from the invocation of that right.'"  Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294(PKL), 2003 WL 21998980, at *2 (S.D.N.Y. Aug. 22, 2003) (quoting Baxter v. Palmigiano, 425 U.S. 308, 318-20 (1976)); see also Brink's, Inc. v. City of New York, 717 F.2d 700, 710 (2d Cir. 1983).  Any inference drawn from the invocation of the privilege must be reasonable under

the circumstances.  See Brink's, Inc., 717 F.2d at 710.  Thus, on these motions, Gilkey's invocation of his Fifth Amendment privilege during his deposition will permit whatever negative inferences are reasonable under the circumstances in favor of plaintiffs.

The circumstances presented here, however, include not only Gilkey's invocation of his privilege during his deposition but also his unrestricted testimony during the DeWitt hearing.  The purpose underlying the allowance of an adverse inference in civil cases is equitable, not punitive, and serves to vitiate the prejudice to the party denied discovery by invocation of the privilege.  See United States v. 4003-05 5th Ave., 55 F.3d 78, 82-83 (2d Cir. 1995).  In those instances where Gilkey answered a question during the DeWitt hearing, plaintiffs have not been denied discovery as to an answered question and no basis exists for an adverse inference against Gilkey.  Therefore, plaintiffs are entitled to adverse inferences from Gilkey's invocation of his Fifth Amendment privilege only to the extent that the questions to which he asserted the privilege were not otherwise answered during his testimony in the DeWitt hearing.

The question remains, however, whether any adverse inference from Gilkey's invocation of the privilege is limited to Gilkey or should also be applied against Trice, the County, or both.  In LiButti v. United States, 107 F.3d 110 (2d Cir. 1997), the Second Circuit held that where a non-party declines to answer questions at a deposition in a civil case on the basis of the Fifth Amendment privilege against self-incrimination, adverse inferences may be drawn against a party associated with the witness depending on the circumstances of the particular case.  Id. at 120-21.  The court identified "a number of non-exclusive factors" to guide this determination, including the nature of the relevant relationships, the

9

degree of control over the non-testifying witness, the compatibility of the interests between the non-testifying witness and the party, and the role of the non-testifying witness in the litigation.  Id. at 123-24.  However, "[w]hether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth."  Id. at 124.

LiButti concerned the invocation of the privilege by a non-party witness where the court found that such invocation merited an adverse inference against a party.  However, the rationale and analysis of LiButti have equal application to a case, as here, where a party invokes the privilege and the question presented is whether the party's invocation merits application of an adverse inference against other parties.  At least one district court has followed LiButti in determining whether to apply an adverse inference from a party's invocation of the privilege against another party.  See John Paul Mitchell Sys. v. Quality King Distrib., Inc., 106 F. Supp. 2d 462, 471 (S.D.N.Y. 2000).  Accordingly, the LiButti factors will be considered in determining whether any adverse inference drawn against Gilkey from his invocation of the privilege at his deposition should also be applied against Trice, the County, or both.

As to Trice, his relationship with Gilkey appears to have been close politically and through their employment by the AHA, and their interests have remained intertwined leading up to and continuing through this litigation.  Gilkey played a critical role in the events giving rise to this action.  There is no evidence that Trice exercised any control over Gilkey's actions, but it appears throughout the underlying events and the course of this litigation that

Trice has accepted and followed Gilkey's leadership and actions and joined with Gilkey. See Trice Dep. Tr. (Docket No. 100(3), Ex. G) at 58-59 (Trice accompanied Gilkey to solicit absentee ballot applications at Gilkey's request), 79-80 (same); Trice Aff. at ¶ 43 (same); Answers (Docket Nos. 24, 76) (Gilkey and Trice assert joint defenses).  Accordingly, under all of the circumstances presented here, imputing adverse inferences from Gilkey's invocation of the privilege to Trice appears trustworthy and any adverse inferences found applicable against Gilkey here will, therefore, also be applied against Trice.

As to the County, however, Gilkey and the Board had no formal or informal relationship.  Even viewing the evidence on these motions in the light most favorable to plaintiffs, the Board simply acquiesced in Gilkey's conduct.  The weight of the evidence demonstrates at worst that the Board failed to investigate or prevent Gilkey's absentee ballot abuses, not that it directed or joined in any such actions.  Moreover, there is no evidence on these motions that the interests of Gilkey and the County are or were aligned in any significant way.  Therefore, while, as noted, Gilkey played a central role in the events of this case, any adverse inferences from his invocation of the privilege are insufficiently reliable when considered against the County and any such inferences will not be applied against the County.


### C. Plaintiffs' Constitutional Claims

Plaintiffs' first, second, and fourth causes of action all seek recovery under § 1983 alleging deprivations of their Fourteenth Amendment rights to due process and equal protection of the law and their First Amendment right of association.

### 1. State Action

Like the Fourteenth Amendment, § 1983 proscribes deprivations of rights resulting from state action. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); see also United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"). Thus, to prevail against Gilkey and Trice on a claim under § 1983, plaintiffs must demonstrate that these defendants acted "under color of state law." Plaintiffs assert that they have demonstrated state action by Gilkey and Trice here in either of two ways. First, plaintiffs contend that Gilkey and Trice conspired with the County. Second, plaintiffs contend that this element is satisfied by the employment of Gilkey and Trice by the AHA.

### a. Conspiracy with the County

To determine whether the state action requirement has been demonstrated, a court must first identify "the specific conduct of which the plaintiff complains." Am. Manufacturers Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51 (1999) (internal quotation marks omitted); Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003). When a private individual or entity is sued under § 1983, the evidence must demonstrate that the conduct in question is "fairly attributable" to the state. Am. Manufacturers Mut. Ins. Co., 526 U.S. at 50. "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private

12

behavior may be fairly treated as that of the State itself." <u>Tancredi</u>, 316 F.3d at 312-13

(internal quotation marks omitted) (quoting <u>Brentwood Acad. v. Tennessee Secondary Sch.</u>

<u>Athletic Ass'n</u>, 531 U.S. 288, 295 (2001) and <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345,

351 (1974)).

State action is demonstrated where a state actor has delegated a public function to a

private party, exercised "coercive power" over a private party, was "entwined in [the]

management or control" of a private party, or provided "significant encouragement, either

overt or covert," to a private party, or where a private party willingly acted as a joint

participant with the state or was controlled by the state. <u>Tancredi</u>, 316 F.3d at 313 (citations

and internal quotation marks omitted).  However, approval by the state of otherwise private

conduct which occurs within the scope of the state's governmental functions does not

suffice to recast otherwise private conduct as state action "where the initiative comes from

[the private entity] and not from the State and the state has not put its own weight on the

side of the proposed practice by ordering it." <u>Id.</u> (citations and internal quotation marks

omitted).   Thus, mere acquiescence in or approval of private conduct by a state actor will

not transform that private conduct into state action. <u>Id.</u>

The specific conduct of which plaintiffs complain here are the abuses of the

absentee ballot applications and votes by Gilkey and Trice.  The determination of state

action on plaintiffs' first theory necessarily focuses on the conduct of the County.  Plaintiffs

contend that the County conspired with and aided Gilkey and Trice based on the following

evidence:

- Leading to the March 2, 2004 special primary election and for years prior

13

thereto, the Board provided unlimited numbers of blank absentee ballot applications to Gilkey and Trice, received completed applications from them, made arrangements for Gilkey and Trice to pick up absentee ballots at the Board office for delivery to voters, and received and counted absentee ballots from Gilkey and Trice which were invalid for various reasons.

- The Board allowed Gilkey unsupervised access to absentee ballots and applications, both blank and completed.

- During his deposition, Gilkey declined to answer whether Trice or any employee or representative of the Board assisted him in the process of altering absentee ballot applications.  Plaintiffs urge that an adverse inference be drawn from this invocation of privilege that Trice and employees or representatives of the Board in fact assisted Gilkey in altering absentee ballot applications.   Pls. Mem. of Law (Docket No. 100(28)) at 13-15 (citing record bases for contentions); Pls. Reply Mem. of Law (Docket No. 113(8)) at 7-11 (same).

As to this evidence, the provision of bland absentee ballot application forms to Gilkey and Trice is irrelevant as absentee ballot application forms were available to the public at large without restriction, including on the County's website. See <www.albanycounty.com/ uploadedFiles/absentee(1).pdf> (visited July 11, 2006).  Therefore, the fact that the Board may have made blank applications available to Gilkey and Trice carries no probative value. The record also includes evidence that the Board processed applications and issued ballots for voters whose applications stated false reasons for needing to vote as an absentee and, directions on multiple applications that the ballots should be held for Gilkey, and handwriting

14

on such notations different from that of the voters.

Viewing this evidence in the light most favorable to plaintiffs, there is little question that the Board had sufficient cause to question and investigate the validity of those applications.  See N.Y. Elec. Law § 8-402(2) (authorizing a board to order an investigation of an application for an absentee ballot to be conducted either by the board or by a state or county agency).  In fact, the processing of applications for ballots for the March 2, 2004 special primary was halted temporarily by a Board employee when questions arose about the legitimacy of fifty to seventy-five applications delivered to the Board by Gilkey, but the two Board commissioners[5] determined that the applications should be processed. Rogowshi Dep. Tr. (Docket No. 100(3), Ex. K) at 39-41.  However, state law required the Board to permit absentee voters to designate a third-party to receive and deliver their ballots and required the Board to process and count absentee ballots which met the requirements of state law.  See N.Y. Elec. Law § 8-406.  Plaintiffs have offered no evidence that the County violated any laws, regulations, or policies.  See Marks v. Stinson, No. Civ. A. 93-6157, 1994 WL 146113, at *3 (E.D. Pa. Apr. 26, 1994) (holding that Pennsylvania law did not permit a board of elections to deliver an absentee ballot to a third-party designee).

No evidence has been proffered that Gilkey or Trice conspired with any particular Board employee or representative, conferred with any Board employee or representative about their absentee ballot activities, or were directed or controlled in any way regarding

_____

[5]A board of elections exists in each county outside New York City (which has one board for its five counties) to oversee the registration of voters and the conduct of elections.  Each county board is comprised of two commissioners, one from each of the major political parties.  N.Y. Elec. Law art. 2 (McKinney 1998 & Supp. 2006).

15

their absentee ballot activities by any Board employee or representative.  Thus, while it may appear on this record that in the exercise of its discretionary duties, the Board should have investigated the legitimacy of the absentee ballot applications delivered by Gilkey and Trice, there has been no evidence presented  that the County exercised any degree of control over the activities of Gilkey or Trice or did anything other than merely acquiesce in those activities by processing applications and ballots.  In fact, the Board rejected up to one-quarter of the applications submitted by Gilkey for the March 2 special primary.  See Gilkey DeWitt Tr. at 189-90, 218, 285-92 (Gilkey submitted approximately 160-90 applications and received back approximately 130 ballots).  Therefore, as to the County, even viewing the evidence in the light most favorable to plaintiffs, plaintiffs have failed to establish state action on their first theory.

As to Gilkey and Trice, however, there remains the question whether any adverse inferences from Gilkey's invocation of his Fifth Amendment privilege suffice to establish or raise questions of fact as to the County's conduct.  During his deposition, Gilkey declined to answer sixty questions on privilege grounds.  Gilkey Dep. Tr. at 11, 12, 19-36.  Of those, there are five that would support adverse inferences that the County was complicit in the activities of Gilkey and Trice:

> Q    Have you ever obtained from any employee or representative of the Albany County Board of Elections blank absentee ballots?

> Q    Have you at any time obtained access to voting records from the Albany County Board of Elections when its offices were closed?

> Q    Have you at any time accessed from the Albany County Board of Elections the original absentee application of any voter?

16

> Q     Have you at any time made changes to the original absentee ballot application of any voter after it was filed with the Albany County Board of Elections?
>
> Q     At any time have employees or representatives of the Albany County Board of Elections assisted you in the process of altering the absentee ballot application of any voter?

Gilkey Dep. Tr. at 28, 31-33.

In the DeWitt case, Gilkey testified at length about absentee ballot applications and the submission of those applications to the Board.  However, the central issue at that hearing was whether and how many absentee ballots were improperly cast and counted, not whether the Board was complicit in any of Gilkey's activities.  Therefore, while questions to Gilkey during the hearing adverted to the Board, and while Gilkey's answers occasionally referred to contacts with the Board and others in the course of his absentee ballot activities, Gilkey was never directly questioned along the lines of the five questions listed above such that plaintiffs should reasonably have elicited answers to those questions during the DeWitt hearing.

Thus, adverse inferences against Gilkey and Trice from Gilkey's invocation of his Fifth Amendment privilege in response to those five questions are appropriate on these motions.  The adverse inferences reasonably to be drawn are that the Board improperly provided Gilkey with blank absentee ballots, afforded him access to Board records after business hours, improperly afforded access to filed absentee ballot applications, allowed him to alter absentee ballot applications after they had been filed, and assisted Gilkey in altering absented ballot applications.  Considered together with the other evidence, these

17

inferences suffice to demonstrate that the Board joined with Gilkey and Trice knowingly to direct and facilitate their activities.

This evidence is not without contradiction in the record, however.  For example, Gilkey and Trice refute any direction, facilitation, or participation by the Board in their activities.  See  Gilkey DeWitt Tr. at 269; Trice Aff. (Docket No. 104(2)) at ¶ 17.  Accordingly, questions of fact and credibility on this issue preclude summary judgment for either plaintiffs or Gilkey and Trice.  Their respective motions on this ground are denied.


### b. AHA Employment of Gilkey and Trice

In their reply and opposition papers, plaintiffs contend in the alternative that the state action requirement is satisfied by the employment of Gilkey and Trice by AHA during their absentee ballot activities.  Pls. Reply Mem. of Law (Docket No. 113(8)) at 5-7.  This requires a determination whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad., 531 U.S. at 295 (quoting Jackson, 419 U.S. at 351); Tancredi, 316 F.3d at 312-13.  The requirement for "under color of state law" under § 1983 and for state action under the Fourteenth Amendment are identical.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982).  The determination of state action rests on the unique facts of each case.  Brentwood Acad., 531 U.S. at 296.

Here, plaintiffs have proffered the following evidence.  During the period prior to the March 2 special primary, Gilkey was employed by the AHA as an employment liaison officer under a state subsidy attempting to match AHA residents with available jobs.  Gilkey Dep.

18

Tr. at 8-9; Longo Dep. Tr. (Docket No. 100(3), Ex. U ) at 38-39.  During the same period, Trice was also employed by AHA in a position which, <u>inter alia</u>, required him to assist AHA residents in finding employment.  Trice Dep. Tr. (Docket No. 100(3), Ex. G) at 29-31.[6]  In those positions, Gilkey and Trice had access to AHA facilities and contact with AHA residents as government employees.  Townsend Park was kept locked at all times and was accessible only to residents, their guests, and AHA employees.  Saunders Decl. at ¶ 3.  Thus, Gilkey gained entrance to Townsend Park by virtue of his AHA employment.  Finally, on February 15, 2004, Gilkey was encountered on the tenth floor of Townsend Park by a tenants' association officer during a visit to solicit absentee ballot applications.  <u>Id.</u> at ¶¶ 5-7.  Gilkey falsely stated that he was sent by AHA to repair a leak.  <u>Id.</u> at ¶¶ 7-8.  The police were called, but before they arrived, Michael Brown, an Albany City Councilman and a defaulting defendant in this case, appeared.  The police arrived, Brown spoke to them, and Gilkey was allowed to leave without being charged and without any report being filed.[7]  <u>Id.</u> at ¶¶ 9-12.[8]

---

[6]Trice also served as an officer of an AHA tenants' association.  Plaintiffs appear to contend that this position constituted government employment for purposes of the state action analysis.  <u>See</u> Pls. Reply Mem. of Law at 5-6.  There is no evidence, however, that the tenants' association was a public rather than a private entity and, therefore, Trice's position with that association will not be considered as a public position.

[7]A few days prior to the March 2 special primary, Trice and Gilkey requested permission from the tenants' association to enter the building, but their request was denied.  Saunders Decl. at ¶¶ 14-15.

[8]At his deposition, Gilkey asserted his Fifth Amendment privilege in declining to answer "[h]ave you used your position at [AHA] to obtain information about residents for political purposes?"  Gilkey Dep. Tr. at 25.  Such invocation warrants an adverse inference against Gilkey and Trice that Gilkey had in fact used his AHA employment to obtain information to facilitate his absentee ballot activities.

If this evidence is credited, it may reasonably be concluded that the AHA employment of Gilkey and Trice was intertwined with their absentee ballot activities in significant respects.  In particular, a fact-finder could conclude that Gilkey and Trice gained access to AHA facilities by virtue of their employment, either their actual employment or feigned employment, and from the assistance by Brown in his capacity as a city councilman.  These activities of Gilkey and Trice, assisted by Brown, were undertaken under color of law and could reasonably persuade a trier of fact that these actions provided a sufficiently close nexus between the conduct complained of here by plaintiffs and governmental entities.

Gilkey and Trice deny that their employment with AHA played any significant role in their activities.  See, e.g., Trice Aff. (Docket No. 1033)) at ¶¶ 9-11.  For example, most of the absentee ballots collected were from non-AHA residents.  Id. at ¶ 33.  AHA employment was unnecessary for Gilkey and Trice to gain entry to AHA facilities.  Longo Dep. Tr. at 15-18.  Thus, viewing the evidence in the light most favorable to Gilkey and Trice, there is insufficient evidence to demonstrate the requisite close nexus between Gilkey and Trice and their employment or other governmental entities and their absentee ballot activities.  Thus, these conflicts leave questions of fact regarding plaintiffs' proof of state action on this theory and compel denial of the motions of both plaintiffs and of Gilkey and Trice on this ground.

This holding does not alter the determination that plaintiffs have failed to raise a question of material fact as to its right of association claim asserting state action against the County.  First, as discussed supra in subsection (a), plaintiffs have failed to show that the

20

actions of Gilkey and Trice may be fairly attributed to the County.  Second, there has been no showing by plaintiffs that the County knowingly assisted in any way the use by Gilkey and Trice of their AHA employment to facilitate their absentee ballot activities.  Finally, plaintiffs have failed to demonstrate that the County participated in any conspiracy with Gilkey or Trice such that the use of AHA employment by Gilkey and Trice might be attributed to the County.

Accordingly, for the reasons stated above, plaintiffs' motion as to the County, Gilkey, and Trice is denied, the County's motion on this ground as to the fourth cause of action alleging denial of plaintiffs' right of association is granted, and the motions of Gilkey and Trice on this ground are denied.

### 2. Merits

The existence of questions of material fact as to the state action element of plaintiffs' constitutional claims against Gilkey and Trice compel denial of plaintiffs' motion for summary judgment on those claims.  These claims will be considered, therefore, solely on the motion of Gilkey and Trice on the due process and equal protection claims and as to Gilkey, Trice, and the County as to the right of association claim.  In considering defendants' motions as to those claims, the evidence must be viewed in the light most favorable to plaintiffs as the opposing parties.  See subsection II(A) supra.

21

### a. Due Process

Plaintiffs first cause of action alleges that defendants deprived them of their Fourteenth Amendment right to due process of law.  Gilkey and Trice seek summary judgment on that claim on the ground that their conduct did not rise to the level of a constitutional violation.

The right to vote serves as a fundamental guarantee to all citizens of their democratic participation in all matters of their governance.  Shannon v. Jacobowitz, 394 F.3d 90, 93 (2d Cir. 2005) (citing cases).  Impairments of that right are prohibited by the Due Process Clause if caused by the intentional conduct of government officials.  Id. at 94.  Permitting ballots to be counted when cast by individuals not qualified to vote under governing law or in a manner not authorized by governing procedures impairs the due process rights of all who cast legitimate votes by diluting the effect of those votes.  See Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 98 (2d Cir. 2005); Marks, 1994 WL 146113, at *30.  Viewing the evidence in the light most favorable to plaintiffs here, there exists at least a question of fact whether the conduct of Gilkey and Trice caused ballots to be counted which had been cast by means not authorized by state law.

The central inquiry, however, focuses not only on the conduct alleged to have impaired the rights of voters such as plaintiffs here but on the intent of the state actors.  The centrality of the inquiry on intent is illustrated by two recent Second Circuit cases, both arising in the Northern District.  In Shannon, one candidate and voters in a town election sued a county board of elections under § 1983 alleging that their due process rights were violated when voting machines malfunctioned.  The candidate alleged that he was denied

votes cast for him and the voters alleged that their ballots had not been counted.  The

district court granted summary judgment to the plaintiffs and defendants appealed.  The

Second Circuit reversed, holding that while plaintiffs may in fact have been harmed when

the voting machines malfunctioned, plaintiffs had failed to demonstrate that defendants had

acted intentionally to cause the harm.  Shannon, 394 F.3d at 94-97.

In Hoblock, voters in the 2004 special election at issue in this case sued the Board

under § 1983 alleging a deprivation of their due process rights by the Board's refusal to

count certain absentee ballots.  The district court granted plaintiffs' motion for a preliminary

injunction requiring the Board to tally the absentee ballots in question and defendants

appealed.  The Second Circuit affirmed issuance of the injunction, holding that plaintiffs had

sufficiently demonstrated that the Board acted intentionally by first sending absentee ballots

to the voters and then refusing to count them.  422 F.3d at 97-98 ("The key question is

whether the Board's actions in sending absentee ballots to the plaintiff voters and then

refusing to count them is 'intentional state conduct directed at impairing a citizen's right to

vote.'") (quoting Shannon, 394 F.3d at 96).

Thus, the central issue presented here by the motions of Gilkey and Trice is whether

plaintiffs have offered evidence sufficient to conclude that, as state actors, they acted

intentionally with respect to the absentee ballot abuses.  Obtaining absentee ballot

applications, soliciting voters to complete those applications, asserting false reasons on the

applications, delivering the applications to the Board, and receiving back the ballots for the

voters all constituted intentional acts by Gilkey and Trice.  There has been offered no

evidence that either Gilkey or Trice took any action here by accident or through mere

negligence.

Accordingly, viewed in the light most favorable to plaintiffs, the evidence is sufficient to raise a triable issue of fact whether Gilkey and Trice deprived plaintiffs of their due process rights.  The motions of Gilkey and Trice as to the first cause of action are denied.

### b. Equal Protection

In their second cause of action, plaintiffs allege that defendants deprived them of their Fourteenth Amendment right to the equal protection of the laws in violation of § 1983. Plaintiffs contend that defendants' conduct denied their right to equal protection by "dilut[ing] the influence of the non-absentee voters' votes by increasing the number of completed ineligible absentee ballots" and by "dilut[ing] the influence of eligible absentee voters' votes by preventing some absentee voters from ever receiving their ballots."  Pls. Reply Mem. of Law at 15.  Gilkey and Trice seek summary judgment on this claim on the ground that plaintiffs have failed to prove any racially discriminatory intent.  Defs. Mem. of Law at 18-21.

The Equal Protection Clause generally protects individuals from state action which causes them to be treated differently from others similarly situated.  See Deegan v. City of Ithaca, 444 F.3d 135, 146 (2d Cir. 2006).  "Uneven or erroneous application of an otherwise valid statute constitutes a denial of equal protection only if it represents 'intentional or purposeful discrimination.' " Powell v. Power, 436 F.2d 84, 88 (2d Cir.1970) (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)).  Thus, an equal protection claim requires proof

that an identifiable group was treated differently and that such treatment was both intentional and unreasonable.  See Gelb v. Bd. of Elections, 224 F.3d 149, 154 (2d Cir. 2000).  The Equal Protection Clause does in fact protect against discrimination based on race, but it is intentional differential treatment, not simply racially discriminatory motivation, which is required to be shown.  There can be a denial of equal protection without proof of a racially discriminatory motive.  Therefore, the motion of Gilkey and Trice on this ground is denied.

### c. Right of Association

In their fourth cause of action,[9] plaintiffs allege that defendants deprived them of their First Amendment right of association in violation of § 1983 by denying them the right to vote for candidates of their choice.  Pls. Mem. of Law at 23-24.  The County, Gilkey, and Trice seek summary judgment on the grounds that the right does not extend to voting in primaries and that plaintiffs have failed to demonstrate any association involving the named plaintiffs with which defendants interfered.  County Mem. of Law at 9-12; Gilkey/Trice Mem. of Law (Docket No. 114) at 7-8.

The First Amendment itself is silent as to any right of association.  However, the Supreme Court has recognized that such a right exists independent of but derived from the guarantees of speech, press, assembly, and petition in the First Amendment.  NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958).  The right protects the associational

---

[9]This cause of action was added in the second amended complaint.  See Second Am. Compl. at ¶¶ 106-08.

activities of both individuals and groups.  Republican Party of Conn. v. Tashjian, 770 F.2d 265, 276-77(2d Cir. 1985).  As to individuals, the right protects against government intrusion "that select group of intimate relationships and bonds that cultivate shared ideals and beliefs" such as marriage, cohabitation, and parenting.  Id. at 277 (citing cases). Constitutional protection is accorded these activities and others characterized by "smallness, the intensity of the affiliation, the depth of the commitment and the commonality of beliefs and ideals."  Id. at 277 n.21.  Such activities merit constitutional protection because of "[t]he emotional enrichment individuals draw from their affiliations with others[] and the overriding tendency of individuals to frame their identity by reference to a particular group . . . ."  Id. at 277 n.20.

There is no question that the right of association protects the right of an individual to affiliate with a political party, group, or candidate of his or her choice "manifested by contributing money to, or working for, the candidate's campaign, or supporting the candidate in the election.".  Republican Party, 770 F.2d at 277 (citing Buckley v. Valeo, 424 U.S. 1 (1976)).  Defendants contend here, however, that plaintiffs' claim on this ground must fail because there is no evidence that any plaintiff was associated in any way with any particular candidate or group with which the activities of Gilkey and Trice interfered.  In opposition, plaintiffs assert that one plaintiff's absentee ballot was completed by Gilkey and Trice for a candidate not of his choice and that other voters were misled and intimidated into voting for candidates supported by Gilkey and Trice.  Plaintiffs have presented no evidence that party affiliation, candidacy for office, or work on behalf of any candidate was impaired by the activities of Gilkey and Trice.

Therefore, the issue presented is whether interference with the act of voting, without more, constitutes an infringement of the right of association.  Republican Party compels the conclusion that it does not.  As that decision makes clear, the right essentially protects the relationship of an individual to another person or group and activities encompassed within that relationship. Viewing the evidence in the light most favorable to plaintiffs, no relationship between any plaintiff whose vote was affected by the activities of Gilkey and Trice and any candidate or group was affected in any way except for the activity of voting.

Plaintiffs have demonstrated no relationship of any plaintiff to any candidate or group having the "intensity", "depth of commitment" or "commonality of beliefs and ideals" recognized as elements of an association protected by the First Amendment.  Republican Party, 770 F.2d at 277 n.21.  At most, plaintiffs have demonstrated that in an election, voters with no demonstrated relationship to a group or candidate were impeded in casting their ballots for candidates of their choice, not that the activities of Gilkey and Trice impeded their participation in, advocacy for, or support of any particular group or candidate.  Id. at 277.

Voting, of course, constitutes one activity which may manifest support for a group or candidate.  However, voters may cast their ballots for particular candidates in particular elections for  many reasons.  They may wish to support the positions and ideals of a group or candidate or they may simply opt to cast their ballots for a group or candidate for other reasons not evidencing any relationship, including protest against an opposing group or candidate, choosing a candidate for personal characteristics, or even for no reason at all. In short, the act of voting may afford evidence of the type of relationship protected by the

27

right of association, but while the right to vote is protected by other constitutional provisions, see subsections (a) and (b) supra, the act of voting alone, without more, cannot suffice to establish the kind of relationship protected under the First Amendment.

Plaintiffs have offered no evidence of any relationship protected by the right of association other than the act of voting.  Accordingly, the County, Gilkey, and Trice are entitled to summary judgment on this claim.

### 3. VRA

In their third cause of action, plaintiffs contend that defendants intimidated, threatened, and coerced voters to sign absentee ballots and applications.  Gilkey and Trice contend that plaintiffs have failed to demonstrate that Gilkey and Trice were motivated by racial discrimination as required by the VRA and that in any event plaintiffs have failed to demonstrate that defendants intimidated, threatened, or coerced any voter.  The County contends that plaintiffs have failed to demonstrate that any County employee or representative acted with the requisite knowledge and intent.

As enacted in 1965, the VRA constitutes a "comprehensive scheme to eliminate racial discrimination in the conduct of public elections."  Powell, 436 F.2d at 86.  Section 11(b) of the VRA provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce . . . any person  for voting . . . or . . . for urging or aiding any person to vote . . . ."  42 U.S.C. § 1973i(b).  This provision does not protect voters against inadvertent or technical violations of voting procedures but against conduct intended to "intimidate, threaten, or coerce."  Id.; see Olagues v. Russoniello, 770 F.2d 791,

804 (9th Cir. 1985); <u>Pincham v. Ill. Judicial Inquiry Bd.</u>, 681 F. Supp. 1309, 1317 (N.D. Ill.

1988).

While the purpose of the VRA was to eliminate racial discrimination in voting, §11(b)

of the act does not explicitly require proof that racial discrimination motivated the

intimidation, threats, or coercion.[10]  Thus, a plain reading of § 11(b) refutes the contention of

Gilkey and Trice that proof of racial discrimination as a motive must be shown to establish a

claim under this provision.  <u>See</u> <u>Hayden v. Pataki</u>, 449 F.3d 305, 314 (2d Cir. 2006) (noting

that statutory interpretation first requires examination of the language of the statute itself).

Moreover, the legislative history of that section supports this plain reading.  The House

report on § 11(b) states that "[t]he prohibited acts of intimidation need not be racially

motivated; indeed, unlike 42 U.S.C. 1971(b) (which requires proof of a 'purpose' to interfere

with the right to vote), no subjective purpose or intent need be shown."  H.R. Rep. No. 89-

439, at 30 (1965), <u>as reprinted in</u> 1965 U.S.C.C.A.N. 2462.  Research has revealed no

cases directly deciding this issue.  Accordingly, given the plain language and the legislative

history of § 11(b), the contention of Gilkey and Trice that this section requires proof that

they were motivated by racial discrimination must be rejected.

Gilkey and Trice also contend that even viewing the evidence in the light most

favorable to plaintiffs, no evidence has been adduced to support plaintiffs' claim that Gilkey

and Trice intimidated, threatened, or coerced any voter.  Gilkey and Trice contend that their

---

[10]Plaintiffs have proffered no evidence to support a claim that Gilkey and Trice were
motivated by racial discrimination.  Gilkey is white, but Trice is African-American and the
candidates whom Gilkey and Trice supported in the March 2004 special primary election
were both African-American.  <u>See</u> Trice Aff. (Docket No. 103(2)) at ¶¶ 24-25.

actions constituted an effort to "empower" voters to exercise their right to vote, not

to intimidate or coerce voters to cast ballots for particular candidates or not to vote at all.

Plaintiffs contend that whatever the avowed purpose, "the effect of such action was to

intimidate[], threaten[] and coerce[] minority voters."  Pls. Reply Mem. of Law at 16.  In

opposition to defendants' motion, plaintiffs rely on the testimony of three voters and adverse

inferences from Gilkey's invocation of his Fifth Amendment privilege.

        In the light most favorable to plaintiffs, plaintiff Ashley Perez testified that prior to the

March 2 special primary, he was visited at his home by Gilkey and two others.  He was told

that he could vote more conveniently by absentee ballot, agreed to do so, and watched as

Gilkey completed a ballot at Perez's direction.  DeWitt Hr'g Tr. at 32-53; see also Perez

Letter (Docket No. 100(3), Ex. B).  However, Perez offered no evidence that Gilkey or

anyone else ever threatened him in any way or even that he ever felt intimidated or

coerced.  DeWitt Hr'g Tr. at 32-33, 45 (stating as to one individual accompanying Gilkey

that "[h]e did not coerce me.").

        Plaintiff Deborah Williams-Muhammad testified that she was already registered with

the Board as a permanent absentee ballot voter because of a disability, she was visited at

home by Gilkey and Trice before the March 2 special primary, they persuaded her that she

needed to file a separate absentee ballot application for the special primary election, she

signed an application for them, and she later learned that contrary to her wishes and

direction, the absentee ballot had been delivered to Gilkey.  Id. at 54-71; Trice Dep. Tr. at

111-19; see also Williams-Muhammad Letter (Docket No. 100(3), Ex. A).  However,

Williams-Muhammad's dealings in this regard were all through her personal care assistant

and she never spoke directly to Gilkey or anyone associated with him.  DeWitt Hr'g Tr. at 58-62, 66-68.  Moreover, like Perez, Williams-Muhammad offered no testimony suggestive of any acts constituting intimidation, threats, or coercion.

Finally, plaintiff Christine Hughes declares that prior to the March 2 special primary, an African-American male came to her apartment in an AHA building regarding an absentee ballot for her disabled husband, but Hughes refused to admit him to her apartment.  Hughes Decl. (Docket No. 100(3), Ex. A).  The same man returned later that day with a ballot for her husband, who marked the ballot for a candidate for whom he did not wish to vote because the man told them that their preferred candidate "had not been doing anything for the people down here lately."  Id. at ¶ 4.  Hughes "felt scared and pressured" by the man.  Id.  A white male came to her home later that day to pick up the absentee ballot, was told another had already done so, and was never admitted to Hughes' apartment.  Id. at ¶ 5.  The absentee ballot application directed the Board to "hold for Dennis Bagley," not Gilkey.  Id. at ¶ 6.[11]  First, while Hughes declares that she felt scared and pressured, she specifies no acts by the unidentified man which could fairly constitute intimidation, threats, or coercion.  Second, there is no evidence in the record that the solicitation of the Hughes application was attributable to Gilkey or Trice.

Thus, while the evidence offered by these three witnesses would fairly support a finding that Gilkey and Trice misinformed, defrauded, tricked, or deceived these individuals,

---

[11]The absentee ballot applications of both Perez and Williams-Muhammad contained notations directing the Board to hold the ballots for Gilkey.  DeWitt Hr'g Tr. at 50 (Perez), 252 (Williams-Muhammad).  Therefore, while neither Perez nor Williams-Muhammad identified Gilkey as the person who solicited the absentee ballot applications, the notations on the applications linked Gilkey to the solicitations of those applications.

they provide no sufficient basis for a finder of fact to conclude that Gilkey or Trice committed any acts of compulsion as required to prove intimidation, threats, or coercion.

Plaintiffs' VRA claim may survive defendants' motions on this ground, then, only if Gilkey's assertion of his Fifth Amendment privilege affords a sufficient adverse inference to create a question of fact.  Plaintiffs have not referred to any particular questions to Gilkey at his deposition which would support an adverse inference in this regard.  A review of the transcript of Gilkey's deposition reveals that while Gilkey invoked his privilege as to questions concerning Perez and Williams-Muhammad,[12] none of the questions inquired about matters related to intimidating, threatening, or coercing them or any other voter.  See Gilkey Dep. Tr. at 23-25.  Accordingly, no adverse inferences may be drawn against Gilkey and Trice from Gilkey's refusal to answer questions during his deposition which would support plaintiffs' VRA claim.  Defendants' motions on this ground are granted.

In the alternative, the County also seeks summary judgment on the VRA claim on the ground that there has been no evidence presented that the County participated in any way in the conduct of Gilkey or Trice giving rise to the claim of intimidation, threats, and coercion.  The County is correct.  Even assuming that the conduct of Gilkey and Trice described herein rose to the level of a violation of § 1973i(b), there has been no evidence proffered that the County participated in that conduct in any way or that it even knew or should have known of that conduct.  Therefore, the County is entitled to summary judgment on the VRA claim on this ground as well.

---

[12]Gilkey was not directly asked any questions about Hughes.

## III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

1. Plaintiffs' motion for summary judgment (Docket No. 100) is **DENIED** in all respects;

2. The County's cross-motion for summary judgment (Docket No. 102) is **GRANTED**, and judgment shall enter for the County as to plaintiffs' third (VRA) and fourth (right of association) causes of action; and

3. The motions of Gilkey and Trice for summary judgment (Docket Nos. 103 and 104) are **GRANTED** as to plaintiffs' third (VRA) and fourth (right of association) causes of action as to which judgment shall enter in favor of Gilkey and Trice, and **DENIED** as to plaintiffs first (due process) and second (equal protection) causes of action.


**IT IS SO ORDERED.**


DATED:  July 12, 2006
          Albany, New York

David R. Homer

United States Magistrate Judge

33